Case number 19-6297 Johnny Gatewood v. United States of America, oral argument is not to exceed 15 minutes per side. Mr. Paler, you may proceed for the appellant. Good morning, your honors. Good morning, Mr. Riggs. May it please the court, I'm Tyrone Paler. I'm the first assistant federal defender for the Western District of Tennessee. Ms. Doris Randall-Holt is our federal defender and we represent the appellant, Johnny Gatewood. I would like to request five minutes for oral time at this time. Yes, that's fine. Okay, we are here because we believe the district court erred when it dismissed Mr. Gatewood's 2555 petition because it believed that the vagueness of the residual clause of 18 C, 3559 C remained open question. The district court erroneously believed that the question remained open because the Supreme Court nor this court has held that the 2015 Johnson case, which invalidated the residual clause of the Armed Career Criminal Act, was retroactively applicable to 3559 C's residual clause. The district court granted a certificate of appealability on the limited issue of the timeliness of our petition. The district court never reached the merits of the petition. Mr. Gatewood was convicted in 1997 on two counts. Can I ask you, Mr. Paler, is there a reason why we shouldn't go beyond the issues reached by the district court? In other words, your opening brief, I think, primarily focused on the one year within Johnson and whether that was the right timeline and the government sort of conceded that and then moved on to some other arguments, maybe cause of prejudice, and then you picked those up in your reply brief. So is there any reason why we shouldn't reach those arguments today? Yes, Your Honor, we shouldn't address those arguments because the district court hasn't had an opportunity to review those those arguments on the merit. The district court simply dismissed the petition as untimely and issued a certificate of appealability. It's our position that the district court should have an opportunity to weigh in on these issues before any review by this court. Are there arguments that you would make in the district court that you didn't make to us on the issues that the government raised? There may be additional arguments that we would like to present to the district court depending on how the district court would carry us in the issues presented in the briefs. In our arguments, Your Honor, we feel that it's appropriate for the district court to weigh in on the matter before any review of this court. But we only have pure questions of law before us, is that correct? So we have to decide whether the prior convictions are violent crimes within the meaning of the three strikes law, or we have to decide whether there's cause and prejudice for the procedural default. I mean, we would have to do that first. And those are just pure questions of law, right? And they've been fully briefed? They are pure questions of law, Your Honor, and we addressed those issues in our reply brief. We didn't address those issues in our initial brief because we didn't have a certificate of appealability on those issues. Sure, that makes sense. Yes. So we did address those issues in our reply brief. There may be some variances that we would address at the district court level if we were, or before this court, if the district court had reached the merits of the case below and denied the petition on one of those basis itself. Well, why don't we talk about the procedural default? So you concede you didn't raise the Johnson argument in the Court of Appeals on direct appeal. So you would have to establish cause and prejudice. And for cause, you rely on novelty. But can you walk me through that? Because it seems to me that you yourself concede that other people were raising this claim in 1997, the vagueness claim. Well, Your Honor, and I cite in my reply brief to read, which is a 1984 case, wherein the second prong of the analysis suggested where a near unanimous body of ACCA was not unconstitutionally vague. In 1995, this court itself in United States versus Vesey rejected the vagueness challenge to the ACCA's residual clause. So this argument was foreclosed to Mr. Gatewood during the time of his direct appeal. So in that context, when Johnson came and rejected the vagueness issue, I mean, before Johnson, the Supreme Court itself said that this vagueness issue, the residual clause of the Armed Career Criminal Act was not vague. It did that in James. That was in 2007, 10 years after the direct appeal. It was, Your Honor. But because a near unanimous body of lower court held that the residual clause of the Armed Career Criminal Act was not unconstitutionally vague, it was an argument that couldn't properly be raised or properly be considered at the time of Gatewood's direct appeal. But didn't we, in a case which my law clerk is a bit of a linguist, and she tells me it's pronounced Sheetsinovic, but it begins with a C, C-V-I-J-T-N-I-N-O-V-I-C. Didn't we say that under the Supreme Court's opinion in Bowsley or Boosley that comes after Reed, that the mere fact that lower courts have rejected the claim is not cause? I thought that's what we said in Sheetsinovic and also in Gibbs. Your Honor, I'm not familiar with that case right off hand, but what I would tend to argue in this situation, Your Honor, is that we had a body of a near unanimous body of lower courts that rejected this argument, and it wasn't until the Supreme Court itself, to a front page, requested that the party fully brief this issue of the vagueness issue that it even became something to where people similarly situated to Mr. Gatewood and those with the on-career criminal residual clause vagueness issues could argue before a court with any likelihood of success that these statutes contained constitutionally vague provisions, which made them unconstitutional. So in light of that, as it relates to whether there's cause, it's our position that we've established the cause based on that second prong of that Reed case, and as it relates to prejudice, Your Honor, the government argues that the sentence, a mandatory life sentence, is statutorily permissible, but the government ignores the fact that the 3553A factors requires a court, when not faced with a mandatory life sentence situation, to consider what the guideline range in those cases would be. Not every individual who is facing a statutory maximum of life, or zero to life, will receive a life sentence. In order for a court to do that in light of guideline ranges that are substantially lower than a life sentence, a court has to put on record the reasons for the variances that will take a guideline range maxed out at 235 months to a life sentence. None of those things happen. So there is prejudice to Mr. Gatewood in the fact that he has already, to this point, served in excess of what the guideline range would have been day for day at this point, with the guideline range topped out at 235 months. So we believe we have the cause and the prejudice that would allow us to move on, and I see my time is out, Your Honor. I will address any other issues in my rebuttal. Judge Sirhanich, Judge Riedler, do you have any more questions? No, I do not. Okay, thank you. We'll hear from Mr. Ritz. Good morning. May it please the Court, Kevin Ritz for the United States. Twenty-three years ago, the District Court imposed the three strikes sentencing enhancement on Mr. Gatewood. That enhancement would be valid even today. In our view, the most straightforward way to resolve this appeal is to hold that Arkansas robbery is a serious violent felony and affirm the District Court on that basis. I would like to start with the merits. In our view, the merits are whether Arkansas robbery satisfies either the enumerated clause or the use of force clause. Can I just jump in? Can we jump over the procedural default and go straight to the merits, or are we required to address the procedural default first? Your Honor, this Court can skip over it. It's a prudential doctrine, procedural default. It's an affirmative defense. We did raise it below. We're raising it. However, it's not a jurisdictional or mandatory claim processing rule, at least in our view. It's simply a procedural bar that can be raised and can be enforced. In our view, like we say, this is really an easy case. Can I just ask one more question? You said, in our view. Can you tell me if I'm walking into a minefield there? I didn't see that briefed. In other words, is there some doubt about whether jumping over a procedural bar is jurisdictional? Your Honor, I was just looking at Savinca that in Snyder, which we did cite, and some of those types of cases this Court has held, a 2255 denial can be affirmed on any basis supported by the record. I guess we would tether that view to that principle. Okay. I mean, just in terms of jumping over, we're actually jumping over quite a bit if you compare what you're asking us to reach versus what the District Court resolved. And your friend on the side says that there might be other arguments he'd like to make in the District Court. So it's atypical for us, right, to not remand back to the District Court to reach issues in the first instance? Somewhat, Judge. But in Snyder and related cases, this Court has done that. And I would say, yes, that path is certainly available to this Court. And we and other 2255 scenarios like this, where the law has changed, where our position has changed, like you said on timeliness, we've looked at it and said, you know what? We recommend that you remand. We looked at this case and we believe there's no good basis. There's no good reason to do that. For us, it would come down to efficiency. These are purely legal issues, as Judge Larson stated. They were actually fully briefed below. Fair, Mr. Paylor, I understand. I wanted to say more about the merits. Maybe we would have done so too. But they were briefed. They were briefed in the response and the reply. They are briefed before this Court. There is no need for fact-finding or an evidentiary hearing. And it's an efficiency point. Mr. Gatewood, as I understand it, is 70 years old. His case has been in front of this Court numerous times. If this Court were to send it back, I would, my educated guess is that the aggrieved party would be seeking to bring it back in front of this Court again and arguing about whether Arkansas robbery qualifies. In our view, the most efficient way is to proceed to the merits. And it might be different, Judge, if this were a close call on the violent felony question. In our view, it's just not. The Stoeckling standard on the use of force clause gives us a very clear bar that's a pretty low bar for whether robbery statutes involve, as an element, the use of force. This statute comfortably clears that bar. It also comfortably clears the bar of the enumerated offenses clause, which is an extremely broad clause. It's one of the broadest clauses I've seen in these violent felony, crime of violence statutes. It says by whatever designation and wherever committed, these state robbery statutes are going to qualify. As the Fourth Circuit explained in the 2019 Johnson decision, Congress meant to sweep in a broad range of robbery statutes. And in fact, there's a statutory escape hatch for robbery statutes that Mr. Gatewood litigated in his original criminal case and before this Court 20 years ago, unsuccessfully. But the point would be that Congress meant to actually gave defendants a way to show that their robbery conviction should not qualify. Again, there's no need to look at Shepard documents or state. No one's arguing divisibility questions. The Arkansas state courts have held, as we explained in our brief, over and over that the force requires. I'm moving back to the use of force clause. The force required in this slight, dating back 120 plus years, state cases in Arkansas have set forth that principle. Mr. Gatewood has failed to cite any Arkansas case showing that the Arkansas courts have applied it in an overbroad way. And that's, in our view, fatal to his claim under the Moncrief principle that there must be a realistic probability, not just a theoretical possibility, that the courts in Arkansas would apply it to nonviolent conduct. For those reasons, the merits are easy. I can address the procedural default question as well. On the court, I see Judge Watson. Yeah, no, I would like you to do that. Thank you. Sure. But let me ask a question back on the merits, though. There's nothing from, you'd think the Eighth Circuit might have seen this question before about Arkansas robbery, and there's nothing from that court. Is that correct? No, the Eighth Circuit in the Smith case from 2019 held that Arkansas robbery after Stokelynk qualifies under the use of force clause, and very persuasively in our interview. On this, on the cause and prejudice standard, and to be clear, no one's disputing there was a procedural default. The question is whether it can be excused by either cause and prejudice or actual innocence. Mr. Gatewood actually did not argue actual innocence in his reply brief. We explained why we think that principle doesn't really apply here in the non-capital sentencing context. So on the cause standard, it's a robust standard. In Gibbs and Svejotinovic, this court has explained in light of the Supreme Court case law on this standard that futility is not enough, and the fact that there was the Veazey case in 1995 and other types of cases where there were vagueness challenges to sentencing enhancements weighs in our favor, and it shows that those challenges were out there. They could be made, even if this court, this court had certainly not weighed in on the 3559 residual clause, but even if it had, the futility does not excuse the failure to raise it. Well, futility as, in other words, created by lower court precedent, that's what Svejotinovic would say. What do you make of Raines, though? I mean, Raines is a 2018 or 2019 published decision of this court. It seems to suggest that you can raise such a claim. I'll be frank about our view of Raines is that that two-sentence discussion slash holding on cause is contrary to prior precedent, and when that occurs, the prior precedent should control. Yes, Raines is unhelpful to us because it was a Johnson claim that this court found met the cause standard. That, in our view, is wrong, and the other thing I would say about Raines, and because of the cases we were just discussing, and as you were discussing with Mr. Paylor, it wasn't until 2007 that the Supreme Court talked about the vagueness of the ACCA, and it wasn't until 2015 that they held that that residual clause was vague, and that, again, weighs in our favor that you could have raised this below. Now, it wasn't necessarily a mainstream argument in 1997 or 2000, but it was there. The legal tools were available, and the last thing I'll say about Raines is we would distinguish it as involving the ACCA, and what I mean by that is in the tricky part of these ACCA cases are that there's either two, one of two statutory ranges that apply, either zero to 10 years or 15 to life, and if you are serving the 15 to life ACCA-enhanced sentence, you are serving an, and then that sentence is rendered invalid by precedent, and you're serving an illegal sentence, a sentence that's just not permissible under the statute. We touched on that in our brief that collateral review is not meant to address or remedy sentences that are permissible under the statute, and the guidelines were much lower than life in this case. Life applied because of the enhancement. The question we are now asking, not a direct appeal, it's a much later collateral review matter. It's not would he receive the same sentence in the absence of the police strikes enhancement. I can't credibly argue to this court, oh, yeah, of course he would have received life. That's not my argument, but the argument is it is a constitutionally, or statutorily, excuse me, permissible sentence, even in the absence of the enhancement, and that should factor into the cause of prejudice and actual innocence inquiries. So, let me ask you, let me try a distinction of reigns out for you and see what you think about it. So, as you pointed out in James, the Supreme Court itself foreclosed a Johnson type argument. So, from 2007 until they decided Johnson in 2015, I think that argument was foreclosed by the Supreme Court itself. Mr. Reigns, I believe his direct appeal was in 2013. So, isn't it possible that Mr. Reigns' argument was actually futile because the Supreme Court itself had said no court in the land can grant this, no court in the land can consider this vague, and if that's a distinction of reigns, how would that affect this case? Yes, is the short answer. I think you're right, Judge Larson, that that could be a way to distinguish reigns from what we have because here it was pre-2007, so there was no Supreme Court pronouncement on the question to foreclose that argument, and by the way. So, in other words, futility is still a live doctrine. I mean, Reed hasn't been overruled. Futility is still futility. It's just futility created by the Supreme Court itself, not futility created by lower courts. The Supreme Court, Judge, or as Reed tells us, a near approved of or whatever the language is. Again, that's the exception in Reed that I believe Mr. Day was invoking, but it doesn't apply here. There was no near unanimous body of case law in the 90s and 2000s, certainly not on the 3559 three strikes residual clause. In fact, there's still not a lot of case law on the 3559 residual clause even after Davis in the last year and a half. So, the point would be that that was available to him and that Reed versus Ross framework, those exceptions do not apply in this case. For those reasons, seizure of default does apply. The easiest way is to hold that Arkansas robbery qualifies as the Eighth Circuit has held and as other circuits have held with regard to the very broad enumerated clause. I'm happy to speak about anything else if the court wants me to. I will note very briefly, the certificate of appealability question, that certificate circumscribes only what an appellant can raise in challenging a 2255. It does not circumscribe what an appellee can raise to seek to defend a district court's order denying a 2255. These reasons we ask the court to affirm. Any questions to Dregler, Justice Heinrich? No. All right, we'll hear rebuttal then. Your Honor, what I'd like to address during the rebuttal is Arkansas's robbery statute. We're talking about a 1966 robbery statute and a 1971 robbery statute that was not codified at the time of Mr. Gatewood's conviction. Those statutes themselves focused not on the amount of force. In fact, the statute said the force was immaterial to the conviction for robbery unless it went to show the intent of the perpetrator. What that says to me and to us is that the focus was on the theft and not the force. So, if the focus is on the theft, not the force, any amount of force would be sustained a conviction for Arkansas robbery. That is not the type of force that has been held to be violent, the strong physical force that the Johnson case enunciated to support a crime of violence. It applies in this context as well. So, if we look at the statutes at question at this time, in fact, the amount of force could be the slightest amount of force. We could have someone who bumps into someone in a pickpocket situation to distract them. That's the amount of force. The force wouldn't matter, and if they committed the theft of that person, that person could sustain a robbery conviction under that statute. That is clearly not the type of force that's used to establish a crime of violence or a serious violent felony under the definitions that we have to work with at this point. So, when we look at the statute prior to the codification of Arkansas statute, the government submits that a certain state has held that Arkansas's robbery is a crime of violence. Was it the same statute that's at question in this case? Are we talking about all of Arkansas's robberies from the beginning of the criminal law in Arkansas up until the codification, or are we talking about what we are addressing in this particular case, which is the 1966 robbery statute, the 1971 robbery statute, wherein the amount of force was immaterial to a conviction for the robbery? So, what, but the Supreme Court in Stokeling suggests that you don't need very much force at all, right? It's the force necessary to overcome even the will of a weak-willed victim or something like that. Exactly, but it doesn't say no force. That Stokeling standard doesn't say any force. In the Arkansas robbery statutes, they reference force, but they say the force is immaterial. So, that could be the slightest touch. That could be any touch designed to effectuate the death, because the focus was on the death at that time. So, if we're talking about the Stokeling standard, I would say even this statute is below that bar, that minimal bar, that force designed to overcome the will or the resistance of a victim. Do we look to the victim as to that regard? No, we can't. I mean, when you say any amount of force, it's got to be enough force to make the statute that we're talking about from 1966 and 1971 specifically said the amount of force was immaterial. So, we're not looking at the victim in that context. The sole focus was on the theft that occurred and the slightest amount of force is our position could be used to sustain that Your Honor, a pickpocket who bumps into someone to distract them could be convicted of Arkansas robbery from 1966 or 1971. And I don't believe that's enough force to overcome a victim's resistance or to overcome the resistance of a victim. All right, Mr. Poehler, I see you are out of time. Judge Sirhanich, Judge Schradler, do you have any further questions? I don't. Okay. Thank you both, counsel, for your arguments. They were very helpful. We appreciate your appearing in this odd format that we hope won't be the normal forever. And we thank you very much for your arguments. The case is submitted. You may call the next case.